IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SIDNEY T. MASSEY                                                                                    PLAINTIFF

v.                           Civil No. 12-3157

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM**

Plaintiff, Sidney T. Massey, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his/her claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff applied for DIB and SSI on June 21, 2010 . (Tr. 10.) Plaintiff alleged an onset date of June 1, 2010 due to colostomy, arthritis, pinched nerve in back, right hand numbness, curled pinky finger on right hand, cut tendons in left hand. (Tr. 10, 175.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on May 24, 2011. (Tr. 26.) Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Vocational Expert ("VE") Dale A. Thomas. (Tr. 28.)

At the time of the administrative hearing, Plaintiff was 52 years old, and possessed a GED obtained while incarcerated in county jail. (Tr. 30.) Plaintiff testified that he did not do very well on the math portion of the GED test and still has trouble reading. (Tr. 63.) He reported to the consultative

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

psychological examiner that he was held back in school, was in special education and speech classes, and that his mother forced him to drop out in eleventh grade because he had only passed one high school credit that year. (Tr. 365.) The Plaintiff had past relevant work experience ("PRW") of auto mechanic, factory pet food packer, forklift operator, molding machine operator, boat fiberglass worker, and press operator in a plastics factory. (Tr. 69-70.)

On October 26, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, chronic neck pain, obesity, residual effects of colostomy placement secondary to a colon resection, major depressive disorder, and alcohol abuse in reported remission. (Tr. 12.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work," except that he can only occasionally climb, balance, stoop, kneel, crouch, and crawl. Nonexertionally, the Plaintiff is able to perform simple and repetitive work where interpersonal contact is incidental to the work performed, the complexity of tasks in learned and performed by rote, with few variables and use of little judgment, and the supervision required is simple, direct, and concrete." (Tr. 15.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as bench assembler, hand packager, and a meat/poultry/fish cutter, with the example of poultry eviscerator. (Tr. 20.)

Plaintiff requested a review by the Appeals Council on November 23, 2011. (Tr. 140.) The Appeals Council denied the appeal on October 26, 2012. (Tr. 1.)

**II.    Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that

fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider

the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises two issues on appeal: 1) the ALJ failed to account for the combined effect of all of the claimant's impairments in assessing his Overall RFC; and 2) the ALJ erred when he failed to recognize that Plaintiff " should have gridded in" under section 201.14, Table 1, Appendix 2, Regulation 4. (Tr. 11.)

As Defendant correctly argues in their brief, the ALJ could not rely on the Medical-Vocational Guidelines ("grids") in this case because the Plaintiff has at least one severe non-exertional impairment. (Def.'s Br. 10.) *See Brock v. Astrue,* 674 F.3d 1062, 1065 (8th Cir. 2012)(ALJ must consult a vocational expert instead of relying on Guidelines when claimant suffered from severe mental impairments).

However, this Court has two concerns about the case that require remand, including a Physical RFC which does not include all of Plaintiff's impairments and a failure to develop the record on Plaintiff's possible mental retardation. Because addressing these concerns may ultimately affect the Plaintiff's overall list of impairments, Plaintiffs's first argument will not be addressed at this time.

### A. Physical RFC

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In this case, the only Physical RFC in the record pre-dates the physical consultative exam and therefore does not include the physical diagnosis from that exam. Specifically, the only Physical RFC in the record is dated July 27, 2010. (Tr. 349.) It evaluated Plaintiff for diagnoses of status post-ruptured colon secondary to abscess, status post sigmoid colon resection, and status post colostomy placement. (Tr. 342.) Plaintiff underwent a consultative physical exam with Dr. Spataro on July 11, 2011. (Tr. 439.) Dr. Spataro noted the Plaintiff's colon/colostomy issues. (Tr. 441.) He also included chronic neck pain, chronic lower back pain with degenerative disc disease, radiculopathy, moderately diminished range of motion for lower spine, assorted hand injuries with diminished grip and dexterity for both hands, mild COPD, and history of depression. (Tr.441.) He assessed the Plaintiff with mild to moderate limitations on the various impairments, but did not provide a full physical RFC. The ALJ gave Dr. Sparato's opinion "significant weight." (Tr. 19.) However, there is no physical RFC in the record that takes Sr. Sparato's examination diagnoses into account.

Thus, a remand is required in order for a Physical RFC to be completed which includes Dr. Spataro's findings in the evaluation of the Plaintiff's physical abilities to function in the workplace. The hypotheticals to the VE should contain specific detail about Plaintiff's colostomy and other physical impairments such that the VE can have complete information upon which to base his testimony. This Court is troubled by the current recommendation that the Plaintiff could work as a meat/poultry/fish cutter, with the example of poultry eviscerator. This recommendation appears to have been based on general limitation hypotheticals that did not provide detail on the colostomy. (Tr. 70-72.) It also appears to endanger the health of both the Plaintiff and meat consumers.

A colostomy is an opening between the surface of the skin and the colon. The stoma is the opening and can measure one to one and one half inches in diameter.[2] The wearer thus has an open hole on the surface of their abdomen with a connection directly into his or her colon in order to divert feces

---

[2]http://www.webmd.com/colorectal-cancer/guide/laparoscopic-fecal-diversion (last accessed Mar.7, 2014).

into the colostomy bag. Skin irritations and infections can also develop as a result of feces leaks under the bag.[3]

Plaintiff testified that he continues to have issues with copious bleeding from his stoma due to edges that are jagged, instead of the more normal smooth edges. (Tr. 51.) He also testified to issues with both of his hands due to prior injuries. (Tr. 47-49.) Thus, putting him on a meat cutting assembly line in an environment laden with antibiotic-resistant organisms[4] would appear to create a health risk both for himself and for those who would consume the meat. Further, at least on its face, his employment as a meat cutter may violate any number of health protection regulations, including OSHA's bloodborne pathogens regulations as well as both the Federal and Arkansas Department of Health Good Manufacturing Practices for Food Processing Establishments.[5]

### B. Development of Record Regarding Plaintiff's Level of Mental Functioning

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Once the ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.); *see e.g. Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ's failure to recontact Commissioner's

---

[3]http://www.webmd.com/colorectal-cancer/guide/living-colostomy (last accessed Mar.7, 2014.) .

[4] *See e.g.* NationalAntimicrobial Resistance Monitoring System website, http://www.cdc.gov/narms/about/index.html; Antibiotic Resistance Threats in The United States 2013 (CDC, April 23,2013 (available at http://www.cdc.gov/drugresistance/threat-report-2013/pdf/ar-threats-2013-508.pdf#page=6) (detailing food animals as reservoirs of antibiotic resistant organisms).

[5]*See*. 29 C.F.R. § 1910.1030; 21 C.F.R. 110.10; Code. Ark. R. 007.04.93-003                    .

consultative physician to authenticate his report was reversible error when that report supported Plaintiff's claim).

Plaintiff had no treating psychiatric physician, but saw two consultative psychological examiners: Dr Bunting (arranged by Defendant) and Dr. Vann Smith (arranged by Plaintiff's attorney). The ALJ properly discounted Dr. Vann Smith's opinions as unsuppported by the medical record or by Plaintiff's testimony and based solely on the self-report of the Plaintiff.[6] (Tr. 18.) Dr. Bunting's report was given "significant weight." (Tr. 19.)

Dr. Bunting's diagnosis raised the possibility that Plaintiff's functioning was consistent with a diagnosis of Mental Retardation. In response to a question concerning mental retardation she wrote the following: "Perhaps. He previously had a borderline IQ at best and between his evident depression now and his pain this has probably dropped, though his adaptive functioning may still be too good for this diagnosis." (Tr. 366-67.) She assessed a GAF of 47-57 and also stated that she was unsure if he could handle funds by himself. (Tr. 367-68.)

Unfortunately, no further evaluation of Plaintiff's IQ was performed. The ALJ did not recontact Dr. Bunting to request that these tests be done. Instead, he discredited Dr. Bunting's opinion on this point, stating:

> The doctor's opinion that the claimant's IQ was approaching the mentally retarded range is not necessarily supported by the medical evidence as a whole, including the IQ testing performed by Dr. Smith. While Dr. Smith assigned the claimant severe mental limitations which, he opined, would render the claimant disabled, he also noted the claimant earned a Full Scale IQ score in the average range.

(Tr. 18.) The ALJ did not indicate which portion of the medical record was inconsistent with Dr. Buntings finding. Nor did the ALJ indicate why Dr. Vann Smith's IQ testing score constituted reliable

---

[6]*See also Flynn v. Astrue*, 2012 WL 6209990, *4 (noting that several courts have affirmed decisions where the ALJ gave little weight to or discounted the one-time examination reports of Dr. Vann Smith).

information in this context when the entirety of Dr. Vann Smith's findings had been deemed to be unreliable in the immediately preceding paragraph.

It is well-established that the ALJ's function to resolve conflicts amongst physician opinions. *Pearsall v. Massanari,* 274 F.3d 1211 (8th Cir. 2001). However, in doing so the "ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004)  Cherry-picking one test score from a consulting examiner whose opinion the ALJ had otherwise completely discounted for the sole purpose of discounting another examiner's findings fails to provide the appearance of neutrality. Further, once the ALJ was made aware of a crucial issue that might change the outcome of the case , such as borderline mental functioning or possible mental retardation, he had a duty to further develop the record on that issue. He did not. Therefore, a remand is necessary.

On remand, the ALJ is directed to recontact Dr. Bunting and have her fully evaluate Plaintiff's IQ and cognitive functioning.  As part of this evaluation, Dr. Bunting should complete a Mental RFC. Once this mental RFC is completed, it, and the Physical RFC information detailed above, should be presented to a VE, either in person or by interrogatory.

**IV.     Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 7th day of March 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)